# EXHIBIT J

Details Of Contributory Infringement

Any time one copies or uses the work of an author it is referred to as copyright infringement. To prove copyright infringement, the plaintiff must prove (1) ownership of a valid copyright; (2) the defendant has copied the work; and (3) such copying constitutes unlawful appropriation. Defendants' use of Plaintiff's work without his permission is in fact copyright infringement.

A type of secondary liability for copyright infringement in which one party may be held liable for the infringing acts if the party has knowledge of the infringing activity and makes a material contribution in aid of the infringement. Contributory copyright infringement is a way of imposing secondary liability for infringement of a copyright. It is a means by which a person may be held liable for copyright infringement even though he or she did not directly engage in the infringing activity. It is one of the two forms of secondary liability apart from vicarious liability. Contributory infringement is understood to be a form of infringement in which a person is not directly violating a copyright but induces or authorizes another person to directly infringe the copyright. Defendants have infringed upon the rights of the Plaintiff and his works, and profited from this infringement.

When another party uses or distributes your copyrighted work without consent, he or she may be found liable for copyright infringement. There are several types of copyright infringement. (i) Direct infringement occurs when a party uses copyrighted work without consent from the owner of the copyright. (ii) Contributory infringement occurs when a party aids in another party's unauthorized use of the copyrighted work. (iii) Vicarious infringement occurs when a company benefits from a party's infringement, despite having the ability to stop the infringement.

## Proving Copyright Infringement

Plaintiff can prove defendants have wrongfully misappropriated his work. Proving copyright infringement requires you to prove that you are the owner of the copyright and that another party copied the copyrighted work. Parties accused of copyright infringement may claim that their use of the copyrighted work is legal, as it is considered fair use. Under the concept of fair use, a party may use a copyrighted work in limited circumstances (e.g., for educational or comedic purposes). In this case defendants used Plaintiff's literary work without permission. The doctrine of contributory infringement is based on the 1911 case of *Kalem Co. v. Harper Bros.*, 222 U.S. 55 (1911). The Second Circuit Court of Appeals asserted contributory infringement occurs when someone, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another. *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159 (2d Cir. 1971). Defendants' action of infringement caused and materially contributed to the infringing conduct against the Plaintiff. Due to this infringement, defendant(s) have made millions of dollars based on the work of the Plaintiff. The Plaintiff should be compensated for his literary work.

"Random similarities scattered throughout the works" do not support a finding of substantial similarity. *Montgomery v. Holland*, 408 F. Supp. 3d 353, 363 (S.D.N.Y. 2019). The similarities between *Shock Exchange* and the plagiarized works are not random. *Shock Exchange* is one hundred percent Plaintiff's work based on his time, talent, and literary skill. Defendants exemplify copyright infringement, and they should be held accountable for their actions.

Willful blindness is knowledge, in copyright law. The court held in the Second Circuit that willful blindness is knowledge the *Digital Millennium Copyright Act. Viacom International, Inc. v. YouTube, Inc.*, 676 F.3d 19 (2d Cir. 2012). The court held "Were Tiffany to prevail in its

argument that eBay was willfully blind, the 'reason to know' standard of the Inwood test would be inflated into an affirmative duty to take precautions against potential counterfeiters, even when eBay had no specific knowledge of the individual counterfeiters." *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 513-15 (S.D.N.Y. 2008), Omega, 984 F.3d at 255 ("Tiffany provided a test for identifying which scenarios could result in liability: '[C]ontributory liability may arise where a defendant is . . . made aware that there was infringement on its site but . . . ignored that fact.'"), with *Tiffany*, 600 F.3d at 107.

Below are details that demonstrate defendants knew or should have known about contributory and third-party infringement because it is central to their business model(s). *ReDigi*, 934 F. Supp. 2d at 659, *Anderson v. Stability AI Ltd.*, 744 F. Supp. 3d 956, 969 (N.D. Cal. 2024). An individual or entity may be held liable as a contributory infringer if that individual or entity, "with knowledge of the infringing activity, induces, causes or materially contributes to the infringing activity of another." *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971).

On September 27, 2023, Jelani Cobb and Coates led a panel discussion. Coates has taught writing at Massachusetts Institute of Technology, New York University, and Howard University, amongst others. Coates confessed that plagiarism, copyright infringement and copying other authors' language, sentence structure and expression of ideas without permission is central to the business models of all colleges.

> Jelani Cobb: Writers read, but writers don't read the way that readers do. (Around the 8:27:20 mark)
>
> Ta-Nehisi Coates: That's right! That's right! (Around the 8:27:32 mark)
>
> Jelani Cobb: The analogy I always use is that an engineer doesn't drive over a bridge the way a commuter does. And engineer's driving over that bridge and going, 'Uhh, I see what you did there. You counterbalanced this with … the low bearing structures are over

> here.' Because they're looking at the language and **the mathematics of that structure** … So **writers are looking at the actual math** of the reading that they do. Like, 'Why does that sentence work? And if I had to **reverse engineer** that sentence …' Sometimes you take one word out and that sentence falls or you add one word in and that sentence falls.
>
> And the part of kind of training as a writer is being able to discern which of those it is … the engineering part of writing … The best hope you have of crafting something that stays with people is mastery of that knowledge. And the way that you do that is by relentless reading and the kind of …'applied reading …' you know, reading the same sentence five times … 10 times until you understand exactly why it sounded the way that it did in your head, and the ability to do that is fundamental.
>
> Coates: When I was writing *Between the World and Me* … I read *[The] Fire Next Time* here at Howard University and was like, totally like blown away. And when I went back to write *Between*, I was like, 'I got to figure out what this dude did.' (Around the 8:28:40 mark)
>
> Jelani Cobb: We talked about that, like when you were working on it.
>
> Ta-Nehisi Coates: What is this guy doing? It's not enough to say 'This is a great book that I want to go write a book that I hope is good. I got to figure out what this guy's … I got to read … Now that [what another author is doing] sounds simple. Now you try to write that and smoothly move, without anybody noticing that you've done it [copied the author's expression] it's extremely, extremely hard. But once you know he's doing that, you can literally try it. (Around the 8:30:25 mark)[1]

"Reverse engineer" connotes examining the composition of another person's language, sentence structure and arrangement of words to duplicate it. In a 2022 panel discussion at Howard, a student asked Coates how he helps students find their own voices. Coates replied that he teaches students how to steal.

> Student: What are some of the ways you challenge your students to think creatively and think critically that allows them to have their own voice in their writing? (Around the 5:30 mark)
>
> Coates: The way I conduct my writing class is there's a pretty healthy amount of reading. What I try to do is train them. **This is true in any writing class.** I try to train them to read like writers and not like readers. I always tell them over and over again this is not book club. By which I mean, I try to challenge them to not say, 'I like when X, Y and Z did A, B, C. **I try to get them to say, 'This is what X Y, Z is doing and I could steal that for myself.'**[2]

---

[1] "International Black Writers Festival 2023 Day 2," Moorland-Spingarn Research Center, YouTube, September 27, 2023. (Around the 8:27:00 to 8:31:00 mark)
[2] "Professor Ta-Nehisi Coates Back to the Mecca P2," YouTube, September 14, 2022.

All of the "College Agents" as defined in the Complaint have benefited from and engaged in contributory infringement. Such College Agents include, but are not limited to, New York University, California State University, Los Angeles, Columbia University, University of California, Santa Cruz, Joh Jay College, Harvard University, University of Pennsylvania, Northwestern University, and Grand View University.

The majority of the College Agents are known as "research institutions" that foster tenured professors who perform research and write articles and books that advance institutional knowledge, and drive College Agents' reputations as experts in a particular field. Research and writings can potentially lead to more research grants and donations. Plaintiff understands that to receive tenure, professors must produce writings and research. Liability may be imposed on a College Agent "who had no knowledge of the infringement, but who had (1) the right and ability to supervise the infringing activity; and (s) a direct financial interested in such activity." *Feder v. Videotrip Corp.*, 697 F. Supp. 1165 (D. Colo. 1988). This pressure could potentially induce certain defendants to plagiarize *Shock Exchange*. Courts have also look to whether defendants investigated or would have reason to investigate infringement. *Hartmann v. Popcornflix.com LLC*, 690 F. Supp. 3d 309, 320 (S.D.N.Y. 2023). Cease-and-desist letters and officer and employee statements could also be seen as evidence that defendants were put on notice pursuant to third-party infringement. *Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640 (S.D.N.Y. 2013).